PETER LEE, Guardian, plaintiff in error vs. WILLIAM Mc-ELVY, defendant in error.

The will of L. contained the following clauses : "I give and bequeath to my daughter, Percy McElvy, and to the heirs of her body, at my death, my negro woman Cherry, and her three children, Lewis, Fed, and Enoch, whom I have loaned to her, and who, by my permission, is now in her possession, and the future increase of the said negro woman, Cherry. I now give and bequeath to my daughter Levisa Dill, my negro woman Milly, whom I had heretofore loaned to her husband, Silas Dill, and has since been traded off by him, and two cows and calves, and my bureau, to be delivered to her out of my stock, by my executor, at my death."

*Held,* that the words *at my death*, next following the words, "heirs of her body," were not intended to qualify these words, but were intended merely to designate the time when the loan to Mrs. McElvy was, according to the wish of the testator to pass into the form of a gift, as contradistinguished from the time when the loan to Silas Dill, was according to his wish, to pass into the form of a gift to Levisa Dill, and therefore that the words, "heirs of her body," were to be taken in their ordinary legal sense, and consequently they were words of entail.

In Equity, in Clay Superior Court. Decision on demurrer by Judge KIDDOO, at chambers, 15th April, 1857.

10

This was a bill filed by Peter Lee, the guardian of William L. Tull, an idiot, against William McElvy.

The main question in this case arises upon the following clause in the last will and testament of Elias Lee deceased, to-wit:

"I give and bequeath to my daughter Percy McElvy, and to the heirs of her body, at my death, my negro woman Cherry, and her three children, Lewis, Fed and Enoch, whom I have loaned to her, and who, by my permission, is now in her possession, and the future increase of the said negro woman Cherry."

The bill alleges that at the death of testator, Mrs. Percy McElvy, the wife of the defendant, had only two children, William L. Tull and Huel A. Tull, being the issue of a former marriage. That afterwards Huel A. departed this life under age, and unmarried, leaving no children, and then Mrs. McElvy died, leaving the said William L. as her only child. That after her death, her husband, the defendant, continued in possession of the said negroes, and has the same now in possession, and holds and claims the same as his sole and absolute property. That said woman Cherry has had several children since the date of said will.

The bill sets up a claim, in behalf of said William L. Tull, to two-thirds of said slaves in value; alleges that defendant has sold his land and is about moving from the State; and prays that a writ of *ne exeat* be issued restraining him from removing the negroes, and for relief, etc.

Defendant demurred to the bill for want of equity.

The Court, after hearing argument, sustained the demurrer, and dismissed the bill, wheupon, defendant's counsel excepts to the said judgment, and assigns the same as error.

JONES, PERKINS & CARITHERS, for plaintiff in error.

WELLBON, JOHNSON & SLOAN, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was there any equity in the bill ?   There was not, if the words of the will were such, that they would, if the property had been real property, have created by the statute *de donis,* an estate tail in Mrs. McElvy, for in that case the words would, by our act of 1821, have vested the absolute estate in her, and through her, in the defendant who was her husband.

The words of the will were as follows : "I give and bequeath to my daughter Percy McElvy, and to the heirs of her body, at my death, my negro woman Cherry, and her three children, Lewis, Fed and Enoch, whom I have loaned to her, and who, by my permission, is now in her possession, and the future increase of the said negro woman Cherry.   I now give and bequeath to my daughter Levisa Dill, my negro woman Milly, whom I had heretofore loaned to her husband, Silas Dill, and has since been traded off by him, and two cows and calves, and my bureau, to be delivered to her out of my stock, by my executor, at my death."

"To the heirs of her body at my death."   We think that the last three of these words, *at my death,* were not intended by the testator, to qualify the rest of the words, *the heirs of her body* ; but were intended by him, to be in contrast with the word *now,* twice repeated in the subsequent part of the above quoted clauses of the will.

It seems, that the testator had lent certain negroes to Mrs. McElvy, and also a negro to Dill, the husband of another daughter, and that he wished that these loans should be converted into gifts, but gifts to take effect at *different times,* viz : one, at the time when he was writing his will, (*"now,"*) the other at the time of his death, (*"at my death."*)

We think, that the words "at my death," were used by him, to help express this wish.   True, that none of the will could have any effect until his death ; still it by no means follows that he knew this.

If it be true, as we think it is, that the words, "at my death" were used for this purpose only, then, there are no words in the will to prevent the words, "heirs of her body," from having their full legal effect.   And their full legal effect would have been such, that if the property bequeathed, had been realty, an estate tail would, by the statute *de donis*, have been created in it in the first taker.

We think therefore, that there was no equity in the bill, and consequently, that the judgment sustaining the demurer was right.

Judgment affirmed.